**NOT FOR PUBLICATION**                                      (Doc. No. 5)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                    :
NARA L. TURNER,                                     :
                                                    :
                    Plaintiff,                      :       Civil No. 10-4103 (RBK/AMD)
                                                    :
          v.                                        :       **OPINION**
                                                    :
CIGNA GROUP INSURANCE; LIFE                         :
INSURANCE COMPANY OF NORTH                          :
AMERICA; and JOHN DOES 1-100,                       :
                                                    :
                    Defendants.                     :
_____             :

**KUGLER**, United States District Judge:

This matter arises out of the allegedly improper denial of life insurance benefits by an

insurance provider.  Presently before the Court is the motion to dismiss the Complaint filed by

Defendant Life Insurance Company of North America ("LINA") pursuant to Federal Rule of

Civil Procedure 12(b)(6).  LINA argues that dismissal is appropriate because the Employee

Retirement Income Security Act of 1974 ("ERISA") preempts all of Plaintiff's claims.  For the

following reasons, LINA's motion to dismiss is **GRANTED**.

**I.      BACKGROUND[1]**

LINA is an insurance company that provides accidental insurance coverage for its

---

[1] As a threshold matter, the Court notes that Plaintiff's Opposition Brief was untimely.  Pursuant to Local Civil Rule 7.1(d)(2), a party must submit opposition papers at least fourteen days prior to the motion day.  Under Rule 7.1(d)(2), Plaintiff's Opposition Brief was due no later than September 20, 2010.  Plaintiff submitted the Opposition Brief on September 26, 2010 – six days past the prescribed deadline.  Although Plaintiff's late filing provides a basis for the Court to disregard the Opposition Brief in its entirety, the Court will accept Plaintiff's brief because it "is not so late as to warrant treating the Motion as unopposed."  See Aurite v. Morris, No. 08-2807, 2010 WL 234941, at *2 (D.N.J. Jan. 15, 2010); cf. Rodriguez v. Hayman, No. 08-4239, 2009 WL 4122251, at *4 (D.N.J. Nov. 23, 2009) (treating motion to dismiss as unopposed where plaintiff filed brief in opposition 79 days after Court-ordered deadline).

subscribers.  The Complaint alleges that CIGNA Group Insurance ("CIGNA") "is an insurance company authorized to transact business in the State of New Jersey, and was the issuer of a policy of accidental death insurance to David W. Turner . . . ."[2]  (Compl. at 1).  LINA underwrote a policy of accidental death insurance issued to David W. Turner.  Plaintiff is the surviving spouse of Mr. Turner.

On October 5, 2008, Mr. Turner died as the result of a boating accident.  At the time of his death, Mr. Turner had an accidental death insurance policy with LINA.  Plaintiff was the beneficiary of Mr. Turner's life insurance policy at the time of his death.  Shortly after Mr. Turner's death, Plaintiff notified LINA and requested death benefits under the terms of Mr. Turner's accidental death insurance policy.  On December 4, 2008, LINA denied Plaintiff's claim.  The Complaint alleges that Defendants denied Plaintiff's claim for benefits under the terms of the policy "citing as their sole reason the allegation that coverage was excluded due to 'intentionally self-inflicted injury, suicide or any attempt threat [sic] while sane or insane.'" (Compl. at 2).  Plaintiff also claims that despite her repeated requests, "[Defendants] refused . . . to honor [her] claim as the beneficiary under the policy as required by the contract of insurance." (Id. at 2).

Plaintiff filed a lawsuit in the Superior Court of New Jersey on June 24, 2010.  The Complaint alleges claims for breach of contract (Count Two); breach of the implied covenant of good faith and fair dealing (Count Three); intentional or negligent infliction of emotional distress (Count Four); negligence (Count Five); misrepresentation (Count Seven); bad faith (Count

---

[2] The parties dispute whether CIGNA is a legal entity that is separate and distinct from LINA.  Plaintiff claims that CIGNA is a separate legal entity from LINA.  (Opp'n Br. at 2).  LINA argues that "[t]he proper defendant is Life Insurance Company of North America" because "CIGNA Group Insurance" is "a service mark utilized by Life Insurance Company of North America, and is not a legal entity."  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss and to Strike Jury Demand at 1 n.1).  Because LINA concedes that it is the proper defendant, and that it uses "CIGNA Group Insurance" as a service mark, any judgment against CIGNA in this litigation is a judgment against LINA.

Eight); and unjust enrichment (Count Nine). Count Six alleges that Defendants unlawfully administered Plaintiff's request for benefits in violation of "one or more statutes and/or administrative code regulations," (Compl. at 4), and Count Ten alleges that Defendants committed "improper acts and/or omissions," (id. at 5). On August 31, 2010, LINA filed a pre-answer motion to dismiss. (Doc. No. 5). LINA contends that Counts Two, Three, Four, Five, Seven, Eight and Nine are preempted by ERISA, and that Counts Six and Ten fail to state a cause of action under Federal Rule of Civil Procedure 12(b)(6).[3] The parties submitted their respective briefs and the motion is ripe for review.

## II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief may be granted. With a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making that determination, a court must conduct a two-part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the Court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to

---

[3] Defendants petition the Court to construe Count One as a claim for benefits under ERISA. Plaintiff does not oppose that request. Accordingly, the Court will construe Count One as a claim for benefits under ERISA.

show that the plaintiff has a "plausible claim for relief." Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

## III.   DISCUSSION

### A.  Express Preemption Under ERISA

ERISA governs the rights and obligations of participants and beneficiaries of employee benefit plans.  "Congress enacted ERISA [1] 'to protect . . . the interests of participant benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and [2] to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal Courts.'" Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)).  "ERISA includes expansive pre-emption provisions, . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" Id. (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)).[4]

ERISA creates two forms of preemption.  First, § 502(a), ERISA's civil enforcement provision, completely preempts all civil causes of action based upon conduct that gives rise to a claim under ERISA.  Complete preemption under § 502(a) "is jurisdictional[,] and confers

---

[4] Indeed, in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987), the Supreme Court explained:

> The detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.  The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.  "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize remedies that it simply forgot to incorporate expressly."

(quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985)) (emphasis in original).

federal question jurisdiction over an action." Massachusetts Mut. Life Ins. Co. v. Marinari, No. 07-2473, 2009 WL 5171862, at *3 n.4 (D.N.J. Dec. 29, 2009).  As a result, "[c]omplete preemption creates removal jurisdiction even though no federal question appears on the face of the plaintiff's complaint." Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000).  Substantive, or "express," preemption "displaces state law but does not . . . confer federal question jurisdiction." Id.  In other words, express preemption "governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court." Id.

LINA contends that Plaintiff's state law claims are expressly preempted by § 514(a), ERISA's express preemption provision.  Section 514(a) provides:  "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan . . . ." 29 U.S.C. § 1144(a), § 514(a) (emphasis added).  As a result, if a state law relates to an ERISA plan, "it is preempted even if it states an otherwise valid state law claim." 1975 Salaried Ret. Plan for Eligible Empls. of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992).  The Supreme Court has construed the terms "relate to" broadly, noting that "a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." Pilot Life, 481 U.S. at 47 (emphasis added).  "A state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plan[], or the effect is only indirect." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990).

The Third Circuit developed a two-step inquiry for determining whether a state law relates to an insurance plan.  First, the district court "must determine if the defendant had an ERISA benefit plan.  Second, [the district court] must analyze whether the state laws 'relate to'

5

that plan." Alston v. Atl. Elec. Co., 962 F. Supp. 616, 622 (D.N.J. 1997).  In order to determine

whether a state law "relates" to an ERISA plan, the district court must determined whether the

state law:  (1) is specifically designed to affect employee benefit plans; (2) singles out such plans

for special treatment; or (3) creates rights or restrictions that are predicated on the existence of

such a plan.  United Wire, Metal & Mach. Health & Welfare Fund. v. Morristown Mem. Hosp.,

995 F.2d 1179, 1192 (3d Cir. 1993).  A state law claim is predicated on the existence of an

employee benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing

liability" and the "trial court's inquiry would be directed to the plan."  Nobers, 968 F.2d at 406.

A state law is also "preempted . . . if its effect is to dictate or restrict the choices of ERISA plans

with regard to their benefits, structure, reporting and administration, or if allowing states to have

such rules would impair the ability of a plan to function simultaneously in a number of states."

United Wire, 995 F.2d at 1193.  "[C]ommon law causes of action . . . based on alleged improper

processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria

for preemption" under ERISA.  Pilot Life, 481 U.S. at 48.

        As in any preemption analysis, when applying those steps, the district court must be

mindful that "the purpose of Congress is the ultimate touchstone."  Metropolitan Life Ins. Co. v.

Massachusetts, 471 U.S. 724, 745 (1985).  Thus, a district court should "look[] to the objectives

of the ERISA statute as a guide to the scope of the state law that Congress understood would

survive."  DeBuono v. NYSA-ILA Med. and Clinical Servs. Fund, 520 U.S. 806, 813-14 (1997).

        With respect to the first step in the express preemption analysis, it is undisputed that Mr.

Turner's accidental death insurance policy is an employee benefit plan under ERISA.  With

respect to the second step of the express preemption analysis, Plaintiff's common law claims are

not "specifically designed to affect employee benefit plans," and do not "single out" employee

benefit plans for special treatment.  Id.  All of Plaintiff's common law claims "are 'generally applicable' laws that 'make[] no reference to, [and] indeed function[] irrespective of, the existence of an ERISA plan.'"  Ragan v. Tri-Cnty. Excavating, Inc., 62 F.3d 501, 511 (3d Cir. 1995) (quoting Ingersoll-Rand, 498 U.S. at 139).  Thus, the critical inquiry is whether Plaintiff's common law claims are "predicated on the existence of" an ERISA plan.  United Wire, 995 F.2d at 1192.  Because all of Plaintiff's state law claims are predicated on the existence of an ERISA plan, they are preempted by ERISA.

> **1.     Counts Two, Three, Five, Eight, and Nine**

Counts Two and Three of the Complaint allege that Plaintiff was entitled to death benefits under the terms of Mr. Turner's employee benefit plan, and that Defendants' failure to provide those benefits was a breach of contract and a breach of the implied covenant of good faith and fair dealing.  (Compl. at 2, 3).  Count Five alleges that Defendants "were negligent in their adjusting, handling and/or administration of Plaintiff's request for benefits under the accidental death insurance policy" (id. at 4), and Count Eight alleges that "Defendants [sic] adjusting, handling and/or administration of Plaintiff's request for benefits under the policy was done in bad faith," (id. at 5).  Finally, Count Nine claims that as a result of Defendants' improper conduct in "adjusting, handling and/or administering Plaintiff's request for benefits," Defendants were unjustly enriched.  (Id. at 5).

Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, bad faith, and unjust enrichment are related to Mr. Turner's ERISA plan.  Generally, "suits against . . . insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)."  Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 278 (3d Cir. 2001)

(citation omitted).  The reason that common law claims for denial of benefits "relate to" an ERISA plan is "the decision whether a requested benefit or service is covered by the ERISA plan falls within the scope of the administrative responsibilities of the . . . insurance company and therefore 'relate[s] to' the employee benefit plan."  Id. at 278.

Here, Counts Two, Three, Five, Eight, and Nine center on Plaintiff's allegation that Defendants improperly determined that Mr. Turner's death is not covered by his ERISA plan. Each of those claims specifically refer to Mr. Turner's employee benefit plan and allege that Defendants improperly refused to honor Plaintiff's request for benefits under the terms of Mr. Turner's ERISA plan.  In order to adjudicate those claims, the Court must decide whether, based on the terms of Mr. Turner's ERISA plan, LINA appropriately denied Plaintiff's claim for benefits.  Because the decision whether a requested benefit is covered by an ERISA plan is "within the scope of the administrative responsibilities of [an insurance company]," and LINA's decision to deny Plaintiff benefits is the basis of Counts Two, Three, Five, Eight and Nine, those claims "'relate to' [an] employee benefit plan."  Id.  Accordingly, ERISA preempts those claims. See Majka v. Prudential Ins. Co. of Am., 171 F. Supp. 2d 410, 414 (D.N.J. 2001) (dismissing Plaintiff's breach of contract and breach of the duty of good faith and fair dealing claims under § 514(a)).

### 2.      Count Seven

Count Seven of the Complaint alleges that "Defendants misrepresented to Plaintiff that no benefits were owed under the policy based on the 'intentional self-inflicted injury'/ 'suicide' exclusion."  (Compl. at 4).  The Complaint further alleges that "Defendants made that misrepresentation knowing it was false" and "with the intent to deceive . . . ."  (Id.).

Here, Plaintiff's misrepresentation claim is not only "predicated on the existence of an ERISA plan" – it is entirely dependent upon the existence of an ERISA plan.  <u>United Wire</u>, 995 F.2d at 1192; <u>see</u> <u>Beye v. Horizon Blue Cross Blue Shield of New Jersey</u>, 568 F. Supp. 2d 556, 569 (D.N.J. 2008) (finding that ERISA preempted misrepresentation claim because "[plaintiff's] misrepresentation claim[] [is] entirely dependent on her rights to benefits under the terms of her ERISA plan.").  In order to find, as Plaintiff alleges, that "Defendants misrepresented . . . that no benefits were owed under the policy based on the 'intentional self-inflicted injury'/ 'suicide' exclusion" in the death benefits plan, the Court must determine (1) whether the policy actually covers "intentional self-inflicted injury" or "suicide," and (2) whether the circumstances surrounding Mr. Turner's death fall within the definition of "intentional self-inflicted injury" or "suicide" under the terms of the plan.  Thus, Mr. Turner's ERISA plan is "a critical factor in establishing liability" for Plaintiff's misrepresentation claim.  Accordingly, Plaintiff's misrepresentation claim is preempted by ERISA.

### 3.       Intentional Infliction of Emotional Distress

Count Four of the Complaint alleges that "Defendants [sic] [made the] unsupportable and shocking assertion to his recently widowed spouse and children that David W. Turner's death was the result of his 'intentional self-inflicted injury and/or suicide' intentionally and/or negligently inflicted great emotional distress and injury to the Plaintiff."  (Compl. at 3).  Plaintiff argues that "the operative event giving rise to plaintiff's claim embodied in [her emotional distress claim] was not the denial of benefits, but defendants' tortious statements claiming David Turner had committed suicide," and asserts that "[those] statements would have been actionable even absent [Mr. Turner's] insurance policy."  (Opp'n Br. at 4).

9

"In order to prevail on [a] common law claim [for intentional infliction of emotional distress], 'the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe.'" Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1115 (N.J. 2009).  To demonstrate that conduct is sufficiently "extreme and outrageous" the plaintiff must prove that it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988) (quoting Restatement (Second) of Torts, § 46 cmt. d (1965)).  Allegations of mere "aggravation, embarrassment, and an unspecified number of headaches, and loss of sleep" are insufficient." Id. at 864.  "[T]he emotional stress suffered by the plaintiff must be 'so severe that no reasonable man could be expected to ensure it.'" Id. (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).

Here, Plaintiff's intentional (or negligent) infliction of emotional distress claim is related to Mr. Turner's ERISA plan because in order to establish that Defendants' representations concerning the conditions of Mr. Turner's death constitute "extreme or outrageous" conduct, the Court must examine whether Plaintiff is entitled to payment under the terms of Mr. Turner's ERISA plan.  Defendants denied Plaintiff's request for death benefits, citing provisions in Mr. Turner's ERISA plan that exclude payments when the insured dies as a result of self-inflicted injury or suicide.  In a letter Plaintiff attached to the Opposition Brief,[5] John H. Armstrong, an

---

[5] The general rule is that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  "However an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Id. (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (3d Cir. 1996)) (emphasis in original).

Here, the Court may consider the letter from CIGNA dated December 4, 2008 because it is both "integral to and explicitly relied upon" in the Complaint.  The Complaint alleges:

Accident Specialist employed by CIGNA, informed Plaintiff that Mr. Turner's ERISA plan did

not cover "intentionally self-inflicted Injury, suicide or any attempt threat while sane or insane,"

(Opp'n Br. Ex. B at 1), and explained that the results of an investigation concerning her

husband's death revealed that, at the time of his death, "Mr. Turner's blood alcohol level was

over the legal limit for the State of Delaware for operating a boat," (id.).  In order to determine

whether Defendants' statements concerning Mr. Turner's death were "extreme and outrageous,"

the Court must examine the terms of Mr. Turner's ERISA plan.  If Mr. Turner's ERISA plan

does not cover self-inflicted injury or suicide, then the statements in Mr. Armstrong's letter

concerning the circumstances of Mr. Turner's death are not "extreme and outrageous," whereas

if Mr. Turner's ERISA plan covers self-inflicted injury or suicide, then a reasonable jury may

find that the statements in Mr. Armstrong's letter concerning the circumstances of Mr. Turner's

death are "extreme or outrageous."  Therefore, because the Court must construe the terms of an

ERISA plan in order to determine whether Defendants' conduct is "extreme or outrageous,"

ERISA preempts Plaintiff's intentional (or negligent) infliction of emotional distress claim.  See

Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989) (noting that "[s]tate law claims of

emotional distress arising out of the administration of an ERISA employee benefit plan are also

preempted.") (citing Howard v. Parisian, Inc., 807 F.2d 1560 (11th Cir. 1987)); Martellacci v.

Guardian Life Ins. Co. of Am., No. 08-2541, 2009 WL 440289, at *3 (E.D. Pa. Feb. 19, 2009)

(dismissing plaintiff's emotional distress claim when plaintiff alleged "that his emotional distress

---

On December 4, 2008, Defendants denied Plaintiff's claim for benefits under the
policy of accidental death insurance identified as OK820614, citing as their sole
reason the allegation that coverage was excluded due to "intentionally self-
inflicted injury, suicide or any attempt threat while sane or insane."

(Compl. at 2).  The letter Plaintiff attached to the Opposition Brief is an official statement of CIGNA's decision to
deny Plaintiff benefits.  Because all of the allegations in the Complaint relate to that decision, CIGNA's letter is
"integral to or explicitly relied upon" in the Complaint.  Thus, the Court may consider the letter in deciding LINA's
motion to dismiss the Complaint.

stem[med] from false negotiations and meetings with his employer and attorney pertaining to the administration of [an ERISA plan]").

### 4.      Counts Six and Ten

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although "detailed factual allegations" are unnecessary, the Complaint must, at minimum, contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.  Moreover, as previously discussed, in order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  (Id.) (quoting Twombly, 550 U.S. at 570).

Count Six of the Complaint alleges that "Defendants [sic] adjusting, handling, or administration of Plaintiff's request for benefits have violated one or more statutes and/or administrative code regulations."  (Compl. at 4).  Count Six further alleges that "Plaintiff has, and continues to be damaged by Defendants' improper actions."  Id.

Count Six of the Complaint is woefully deficient.  Without identifying any specific statute or common law cause of action, Count Six vaguely alleges that LINA improperly administered Plaintiff's claim for benefits under Mr. Turner's death benefit plan.  Plaintiff fails to allege how, or why, LINA's conduct was improper, and why she is entitled to relief.  In essence, Count Six is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at 1949.  Therefore, because Count Six of the Complaint fails to state a plausible claim for relief, LINA's motion to dismiss Count Six is granted.

Likewise, Count Ten of the Complaint fails to state a cause of action under federal or state law.  Count Ten vaguely alleges that "Plaintiff has been, and continued to be harmed by

Defendants' improper acts and/or omissions," and "Defendants' improper acts and/or omissions were malicious and/or the result [sic] Defendants [sic] wanton and willful disregard of Plaintiff's rights." (Compl. at 5). Those allegations fail to put LINA on notice of the specific basis for Plaintiff's claims. Instead, Count Ten alleges that Defendants engaged in wrongful behavior and that as a result of Defendants' wrongdoing, Plaintiff is entitled to relief. Those allegations, without more, fail to state a "claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Therefore, the Court must dismiss Count Ten of the Complaint.

In sum, because Counts Six and Ten of the Complaint fail to allege facts sufficient to state a claim for relief under federal or state law, LINA's motion to dismiss those claims is granted.

### 5.      Whether the Court Should Strike Plaintiff's Demand for a Jury Trial

Plaintiff requests a jury trial. Because ERISA preempts all of Plaintiff's state law claims, and Plaintiff fails to state a cause of action for Counts Six and Ten, Plaintiff only has a viable claim for denial of benefits under Section 502(a)(1)(B). However, "[t]he Third Circuit has consistently held that there is no right to a jury trial in suits brought under ERISA Section 502(a)(1)(B)." Killian v. Johnson & Johnson, No. 07-4902, 2008 WL 320533, at *3 (D.N.J. Jan. 28, 2008) (citations omitted) (citing Turner v. CF & I Steel Corp., 770 F.2d 43, 47 (3d Cir. 1985), cert. denied 474 U.S. 1058 (1986)); Cox v. Keystone Carbon Co., 894 F.2d 647, 649-50 (3d Cir. 1990). Because there is no right to a jury trial under § 502(a)(1)(B), and all of Plaintiff's state law claims are preempted by ERISA, the Court will strike Plaintiff's request for a jury trial.

### 6.      Whether Plaintiff is Entitled to Compensatory, Punitive, and Consequential Damages

In Counts Two through Ten of the Complaint, Plaintiff seeks compensatory damages. In addition, Count Ten seeks consequential damages and punitive damages.

Because ERISA preempts all of Plaintiff's state law claims, Plaintiff's recovery is limited to the remedies set forth in § 502(a)(1)(B).  However, ERISA does not allow recovery of extra-contractual damages.  See 29 U.S.C. §§ 1132(a)(1)(B).  Accordingly, Plaintiff's request for compensatory, consequential, and punitive damages is denied.  See Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985) ("[T]he relevant text of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in § 409(a) Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims."); DeVito v. Aetna, Inc., 536 F. Supp. 2d 523, 530 (D.N.J. 2008) ("It is settled law that ERISA does not provide compensatory or punitive damages.") (citing DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 458 (3d Cir. 2003) (Becker J., concurring)); Ford v. Unum Life Ins. Co. of Am., No. 05-105, 2006 WL 624762, at *2 (D. Del. Mar. 9, 2006) ("[L]ost wages, pain and suffering, and other consequential damages, are not available under ERISA.").

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** LINA's motion to dismiss Counts Two, Three, Four, Five, Six, Seven, Eight, Nine and Ten.  Moreover, the Court will construe Count One as a claim for benefits under § 502(a)(1)(B).  An appropriate order shall issue today.


Dated: 5/24/2011                                        /s/ Robert B. Kugler
                                                       ROBERT B. KUGLER
                                                       United States District Judge